IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Willie Butler, | ) | C/A No.: 1:14-1239-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

A.    Procedural History

On October 23, 2012, Plaintiff filed an application for DIB in which he alleged his disability began on September 14, 2012. Tr. at 142–43. His application was denied initially and upon reconsideration. Tr. at 64–67, 71–72. On September 26, 2013, Plaintiff

had a hearing before Administrative Law Judge ("ALJ") Nicole S. Forbes-Schmitt. Tr. at 19–35 (Hr'g Tr.). The ALJ issued an unfavorable decision on October 25, 2013, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 7–18. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–4. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 3, 2014. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 61 years old at the time of the hearing. Tr. at 22. He completed the tenth grade. *Id.* His past relevant work ("PRW") was as a front end loader, a material handler, and a security patroller. Tr. at 25. He alleges he has been unable to work since September 14, 2012. Tr. at 142.

2.    Medical History

Plaintiff presented to Samuel Schumann, Jr., M.D. ("Dr. Schumann"), to follow up for congestive heart failure and hyperlipidemia on August 24, 2012. Tr. at 262. Dr. Schumann noted no abnormalities on examination. Tr. at 263. He assessed improving hyperlipidemia and stable congestive heart failure. Tr. at 264.

Plaintiff presented to Kenneth Hanger, M.D. ("Dr. Hanger"), on November 7, 2012. Tr. at 257. He denied shortness of breath and stated he had not recently had his pacemaker checked. *Id.* Dr. Hanger noted no abnormalities on examination, but did state Plaintiff was having some shortness of breath of unknown etiology. *Id.*

2

On November 9, 2012, Plaintiff presented to Dr. Schumann with complaints of insomnia, joint pain, and shortness of breath with exertion. Tr. at 259. Plaintiff stated his back pain was aggravated by lying down and relieved by movement. *Id.* He also complained of pain in his bilateral wrists. *Id.* Plaintiff was taking no medications. *Id.* Dr. Schumann observed epigastric tenderness, tenderness and spasm in Plaintiff's lumbosacral paraspinals, and arthritic changes in his wrists. Tr. at 260. Plaintiff had normal range of motion ("ROM"), gait, balance, and motor functioning. *Id.* Dr. Schumann assessed pain in the joints of Plaintiff's hands and epigastric pain as new problems, congestive heart failure as stable, and low back pain as unchanged. *Id.* He suggested Plaintiff's shortness of breath and chest pain may be the result of gastroesophageal reflux disease ("GERD"). Tr. at 261. He prescribed Dexilant for GERD and Horizant for insomnia and wrist pain. *Id.*

Plaintiff followed up with Barbara Gregg, FNP ("Ms. Gregg"), in Dr. Schumann's office on December 5, 2012, for left shoulder pain. Tr. at 278. Ms. Gregg indicated Plaintiff's shoulder pain was aggravated by movement. *Id.* She observed Plaintiff to have a painful left shoulder with ROM, but no swelling and normal muscle strength. Tr. at 279. Ms. Gregg administered a trigger point injection to Plaintiff's left shoulder. *Id.*

Plaintiff attended a consultative examination with Temisan L. Etikerentse, M.D. ("Dr. Etikerentse"), on January 3, 2013.[1] Tr. at 269–71. He complained of shortness of

---

[1] Although the report was dated January 3, 2012, the undersigned finds this to be a typo in light of the content of the report that indicated Plaintiff was referred "for a comprehensive exam for purpose of disability," referenced a laboratory report dated

breath with exertion, but denied experiencing swelling in his legs. Tr. at 269. Plaintiff indicated he was prescribed Dexilant for GERD by his primary care physician and that it gave him some relief. *Id.* He complained of low back pain that he described as mild stiffness while sitting. *Id.* He stated he experienced pain in his bilateral wrists each morning that resolved with exercise. *Id.* Dr. Etikerentse observed Plaintiff to have full ROM, no edema, and no tenderness in his lumbar spine. Tr. at 271. Plaintiff had no motor or sensory deficits. *Id.* He was alert, oriented, and had normal mood, affect, and memory. *Id.* Dr. Etikerentse indicated Plaintiff had a remote history of congestive heart failure that appeared to be well-compensated, well-controlled reflux, elevated LDL, mild low back pain with prolonged sitting, and some wrist pain without difficulty. *Id.* An x-ray of Plaintiff's lumbar spine indicated mild to moderate degenerative disc disease and facet arthropathy, most pronounced at L3-4 through L5-S1 and grade I, nearly grade II, anterolisthesis of L5 on S1. Tr. at 267. An x-ray of Plaintiff left wrist indicated mild degenerative changes, mild soft tissue swelling, a nonspecific increased density along the midwaist of the scaphoid, and a 2.3 millimeter unfused secondary ossification center of the ulnar styloid. Tr. at 268.

On January 14, 2013, state agency consultant Tom Brown, M.D. ("Dr. Brown"), indicated Plaintiff was able to perform work with the following limitations: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday;

---

August 22, 2012, stated Plaintiff worked up until September 2012, and was dictated on January 4, 2013. *See* Tr. at 269–71.

frequently balance; occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and avoid concentrated exposure to hazards. Tr. at 44–45.

On February 1, 2013, Plaintiff complained to Dr. Schumann of abdominal pain secondary to history of hernia, left shoulder pain, and sores on his bilateral legs. Tr. at 275. He stated his abdominal pain was aggravated by leaning over. *Id.* Dr. Schumann described Plaintiff as having thick skin with postules on his left leg. Tr. at 276. He observed Plaintiff to have left shoulder tenderness with decreased ROM. *Id.* He noted Plaintiff's shoulder injection only lasted a month. Tr. at 277.

Plaintiff followed up with Dr. Schumann on February 26, 2013. Tr. at 272. He reported chest pain, shortness of breath, and pain and weakness in his left shoulder and arm. *Id.* He stated that the chest pain lasted for five minutes at a time and had occurred twice in the prior four-day period. *Id.* Plaintiff complained of back pain that was aggravated by lying down and relieved by getting up and moving about. *Id.* He stated that Mobic was not helping his shoulder pain. *Id.* Dr. Schumann observed Plaintiff to have chest wall tenderness into his left shoulder and left shoulder pain with lifting and lowering of the arm. Tr. at 273. In a letter, Dr. Schumann indicated Plaintiff's left shoulder injury was consistent with a rotator cuff injury; that the pain in his left shoulder had increased since December 2012; that a steroid injection gave him only minimal relief; that he had limited ROM and could not lift 10 pounds; and that he could not be gainfully employed due to the limitations from his left shoulder injury. Tr. at 283.

An x-ray of Plaintiff's left shoulder on April 3, 2013, indicated mild degenerative changes in his glenohumeral and AC joints. Tr. at 287.

State agency consultant Cleve Hutson, M.D., echoed the limitations set forth by Dr. Brown in a physical residual functional capacity ("RFC") assessment on April 10, 2013. Tr. at 57–59.

On July 9, 2013, Plaintiff complained of left arm and hand pain. Tr. at 300. He indicated the pain lasted for a few minutes and was aggravated by using his hands and sleeping and relieved by use of prescribed medications. *Id.* He observed Plaintiff to have positive Phalen's test and Tinel's sign, but no other abnormalities. Tr. at 301. Dr. Schumann indicated Plaintiff had a new diagnosis of carpal tunnel syndrome. *Id.* He wrote a second letter in which he indicated Plaintiff was recently diagnosed with carpal tunnel syndrome and stated "[t]hese findings indicate that Mr. Butler has multiple, and chronic, problems that will not allow him to be gainfully employed." Tr. at 291.

On July 19, 2013, Dr. Schumann observed no abnormalities when he examined Plaintiff. Tr. at 298. He indicated Plaintiff had worsening hyperlipidemia, improving carpal tunnel syndrome, and stable congestive heart failure. Tr. at 299.

Plaintiff followed up with Dr. Schumann on August 21, 2013, for pain in his bilateral hands. Tr. at 295. He indicated the pain was aggravated by use of his hands and lasted for a couple of minutes. *Id.* He stated his right hand had improved after a recent injection. *Id.* Dr. Schumann diagnosed improving carpal tunnel syndrome. Tr. at 296.

C.    The Administrative Proceedings

1.    The Administrative Hearing

a.    Plaintiff's Testimony

At the hearing on September 26, 2013, Plaintiff testified he was unable to work because he experienced shortness of breath and had a pacemaker. Tr. at 26. He stated he did not sleep well during the night because of shortness of breath. *Id.* He indicated he had experienced panic attacks, but denied being diagnosed with an anxiety-related impairment. *Id.* Plaintiff indicated he continued to have problems with his left shoulder and that he planned to return to his doctor the following month. *Id.* Plaintiff testified he had bilateral carpal tunnel syndrome. Tr. at 27. Plaintiff stated he told his doctor that his shoulder continued to hurt "a little bit." Tr. at 28. Plaintiff testified that he experienced pain in his left shoulder if he held it up for five to six minutes or lifted overhead. *Id.*

Plaintiff testified that Dr. Schumann was his primary treating physician and had treated him for seven to eight years. Tr. at 29.

b.    Vocational Expert Testimony

Vocational Expert ("VE") J. Adger Brown, Jr., reviewed the record and testified at the hearing. Tr. at 24–25, 33. The VE categorized Plaintiff's PRW as a front end loader/forklift operator, *Dictionary of Occupational Titles* ("*DOT*") number 921.683-050, as medium in exertional level with a specific vocational preparation ("SVP") of three; a material handler, *DOT* number 929.687-030, as heavy in exertional level with an SVP of three; and a security patroller, *DOT* number 372.667-034, as light in exertional level with an SVP of three. Tr. at 25. The ALJ described a hypothetical individual of Plaintiff's

vocational profile who could perform light work, but could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and should avoid workplace hazards such as unprotected heights and dangerous machinery. *Id.* The VE testified that the hypothetical individual could perform Plaintiff PRW as a security guard. *Id.*

Plaintiff's attorney asked the VE to assume an individual of Plaintiff's vocational profile who complained of radiating shoulder pain, carpal tunnel syndrome, and repeated shortness of breath. Tr. at 33. He asked the VE if that individual could perform Plaintiff's PRW as a security guard. *Id.* The VE stated that it would depend on the severity of the individual's symptoms. *Id.* He went on to explain that if the individual's primary responsibility was standing, walking, and patrolling and that if the shortness of breath prevented him from doing that on a regular basis, he would be unable to perform Plaintiff's PRW. *Id.*

c.    Witness Testimony

Plaintiff's wife Gail Butler ("Mrs. Butler") testified as a witness. Tr. at 29–32. She indicated Plaintiff frequently complained of problems with his heart, back, shoulder, and wrists. Tr. at 30–31. She stated Plaintiff spent most of his time sitting in a recliner or lying down. Tr. at 31. Mrs. Butler indicated Plaintiff complained of tingling, numbness, and pain in his hands. *Id.* She stated she had encouraged Plaintiff to visit his doctor to determine the source of his pain. *Id.* She testified Plaintiff experienced shortness of breath on a daily basis. Tr. at 32. She indicated Plaintiff had worn a back brace for "quite a few years." *Id.*

2.    The ALJ's Findings

In her decision dated October 25, 2013, the ALJ made the following findings of

fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security
      Act through December 31, 2016.
2.    The claimant has not engaged in substantial gainful activity since
      September 14, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
3.    The claimant has the following severe impairment: chronic heart failure
      status post pacemaker (20 CFR 404.1520(c)).
4.    The claimant does not have an impairment or combination of impairments
      that meets or medically equals one of the listed impairments in 20 CFR Part
      404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and
      404.1526).
5.    After careful consideration of the entire record, the undersigned finds that
      the claimant has the residual functional capacity to perform light work as
      defined in 20 CFR 404.1567(b). Specifically, the claimant can lift and carry
      up to 20 pounds occasionally and 10 pounds frequently and stand, walk,
      and sit for 6 hours each in an 8-hour work day. The claimant can never
      climb ladders, ropes, or scaffolds but he can occasionally climb ramps and
      stairs. Additionally, he can occasionally stoop, kneel, crouch, and crawl. He
      must avoid hazards such as unprotected heights and dangerous machinery.
6.    The claimant is capable of performing past relevant work as a security
      patroller. This work does not require the performance of work-related
      activities precluded by the claimant's residual functional capacity (20 CFR
      404.1565).
7.    The claimant has not been under a disability, as defined in the Social
      Security Act, from September 14, 2012, through the date of this decision
      (20 CFR 404.1520(f)).

Tr. at 12–18.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ did not adequately consider the opinions of Plaintiff's treating physician under the provisions of 20 C.F.R. § 404.1527(c),[2] SSR 96-2p, and SSR 96-5p;

2)    the ALJ did not properly evaluate Plaintiff's ability to return to PRW;

3)    the ALJ failed to consider all of Plaintiff's impairments in combination; and

4)    the ALJ did not properly assess Plaintiff's credibility.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in her decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

---

[2] Plaintiff cites 20 C.F.R. § 404.1527(d), but refers to the language in 20 C.F.R. § 404.1527(c). [ECF No. 21 at 10]. Based on Plaintiff's argument, the undersigned concludes that the citation was in error and considers the criteria set forth in 20 C.F.R. § 404.1527(c).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in SGA; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW;[4] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's PRW to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the

Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Opinion Evidence

Plaintiff argues the ALJ did not adequately analyze Dr. Schumann's opinions under the provisions of 20 C.F.R. § 404.1527(c), SSR 96-2p, and SSR 96-5p. [ECF No. 21 at 10–16]. The Commissioner argues the ALJ provided legitimate reasons for according little weight to Dr. Schumann's opinions. [ECF No. 23 at 10]. She maintains

that the objective evidence and Dr. Schumann's conservative treatment contradicted his opinions. *Id.* at 11.

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." SSR 96-5p, *quoting* 20 C.F.R. §§ 404.1527(a)(2). "An opinion that a claimant is 'disabled' or 'unable to work' is not a medical opinion but an administrative finding, and a physician's opinion on this ultimate issue is not entitled to special weight." *Dowdle v. Astrue*, C/A No. 2:10-2308-MBS, 2012 WL 887471, at *8 (D.S.C. March 15, 2012), citing 20 C.F.R. § 416.927(d); *see also* SSR 96-5p. Although treating physicians' opinions on issues reserved to the Commissioner are never entitled to controlling weight, they must still be evaluated. SSR 96-5p.

The opinion of a treating physician is entitled to deference. SSR 96-2p. If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. §§ 404.1527(c)(2). However, even if an ALJ determines a treating physician's opinion is not entitled to controlling weight, the treating physician's opinion may still support a finding that the claimant is disabled and the ALJ is required to consider the opinion, along with all other medical opinions in the record, based on the factors set forth in 20 C.F.R. § 404.1527(c). *Id.* The factors to be considered include the following: examining relationship; treatment relationship, including length of treatment

14

relationship and frequency of examination and nature and extent of treatment relationship; supportability; consistency with the record as a whole; specialization of the medical source; and other factors. 20 C.F.R. § 404.1527(c); *see also Johnson*, 434 F.3d at 654. In all unfavorable and partially-favorable decisions and in fully-favorable decisions based in part on treating sources' opinions, the ALJ must specify the weight accorded to the treating source's opinion, cite reasons for the weight accorded, and support her decision with evidence in the case record. SSR 96-2p.

The ALJ wrote that she considered the February 2013 opinion of Dr. Schumann that Plaintiff was unable to lift 10 pounds and could not be gainfully employed due to limitations from his left shoulder injury. Tr. at 16. She noted that the decision as to whether an individual is able to work is reserved to the Commissioner. *Id.* She further noted that the statement was unsupported because "there is no evidence of significant treatment for this condition" and because x-rays of Plaintiff's left shoulder in April 2013 revealed only mild degenerative changes in his glenohumeral and acromioclavicular joints. *Id.*

The ALJ indicated she also considered the July 2013 opinion of Dr. Schumann that Plaintiff could not be gainfully employed due to his multiple chronic problems, but found that Dr. Schumann was again providing an opinion on an issue reserved to the Commissioner. *Id.* She further provided that she accorded it little weight because there was no evidence of any significant treatment for left shoulder injury or carpal tunnel syndrome. *Id.*

15

The undersigned recommends the court find that the ALJ did not properly consider Dr. Schumann's opinions as required by 20 C.F.R. § 404.1527(c), SSR 96-2p, and SSR 96-5p. Although Dr. Schumann indicated Plaintiff was unable to work, which was an opinion on an issue reserved to the Commissioner, he also provided judgments about the nature and severity Plaintiff's impairments, indicating that Plaintiff was limited due to carpal tunnel syndrome, had restricted ROM of his left shoulder, and could lift only 10 pounds. *See* Tr. at 283, 291; *see also Dowdle*, 2012 WL 887471, at *8, 20 C.F.R. § 404.1527(d), SSR 96-5p. The ALJ was required to consider these statements and to accord to them some significance in light of the fact that Dr. Schumann was Plaintiff's treating physician. *See* SSR 96-2p. The ALJ cited substantial reasons for concluding that Dr. Schumann's opinions were not entitled to controlling weight, but she then neglected to analyze Dr. Schumann's opinions according to the criteria set forth in 20 C.F.R. § 404.1527(c). *See* Tr. at 16. The ALJ did not acknowledge Dr. Schumann's status as an examining physician or as Plaintiff's treating physician. *See* 20 C.F.R. § 404.1527(c)(1), (2). She did not discuss the length of Plaintiff's treatment relationship with Dr. Schumann or the frequency of examination. *See* 20 C.F.R. § 404.1527(c)(2). Although she generally concluded that the nature and extent of the treatment relationship and the evidence did not support Dr. Schumann's opinions, the ALJ neglected to cite Dr. Schumann's objective findings that supported his opinion, including evidence that Plaintiff had positive Tinel's sign and Phalen's maneuver and restricted range of motion in his left shoulder. *See* 20 C.F.R. § 404.1527(c)(2)(ii), (3); *see also* Tr. at 16, 277, 283, 301. Based on these errors, the undersigned recommends a finding that the ALJ did not comply with

16

the requirements of 20 C.F.R. § 404.1527, SSR 96-2p, and SSR 96-5p in assessing the weight to be accorded to Dr. Schumann's opinions. Therefore, her decision to accord the opinions little weight was not adequately supported by substantial evidence in the case record or by the agency's rules and regulations.

### 2.    Ability to Return to PRW

Plaintiff argues the ALJ did not properly evaluate his ability to return to PRW. [ECF No. 21 at 16]. He contends that his work as a security patroller was not performed at the substantial gainful activity ("SGA") level and that the ALJ erred in classifying it as PRW. *Id.* at 17–18. The Commissioner argues that the ALJ adequately inquired about Plaintiff's work as a security patroller and properly concluded that it was PRW. [ECF No. 23 at 19].

Pursuant to 20 C.F.R. § 404.1520(a)(4)(iv), "[i]f you can still do your past relevant work, we will find that you are not disabled." PRW includes work the claimant performed within the prior 15-year period, that was SGA, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b). SGA is "work activity that involves doing significant physical or mental activities" for "pay or profit." 20 C.F.R. § 404.1572. Work performed for brief periods of time during the 15-year period is not generally considered. 20 C.F.R. § 404.1565(a). However, "the duration requirement is met if the length of the employment was sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation" and "depends on the nature and complexity of the

work." *Drejka v. Commissioner of Social Security*, 61 F. App'x 778, 773 (3rd Cir. 2003), citing SSR 82-62.

The procedures the Social Security Administration ("SSA") uses at step four of the sequential analysis when determining whether the claimant's RFC permits him to return to his PRW are set forth in SSR 82-62. The ALJ must consider whether a claimant has the RFC to "meet the physical and mental demands of jobs he has performed in the past (either the specific job he performed or the same kind of work as it is customarily performed throughout the economy)," and, if he can return to his PRW, he may be found "not disabled." SSR 82-62. The Ruling provides the following detail regarding what an ALJ is to consider in the decision:

> Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

*Id.* "In reviewing disability claims, the Administrative Law Judge must determine precisely the activities involved in the claimant's former job or occupation and the activities that the claimant is capable of performing. *Harris v. Secretary, Dept. of Health*

*and Human Services*, 866 F.2d 1415 (Table), 1989 WL 7013, at \*2 (4th Cir. Jan. 27, 1989), citing *Parker v. Harris*, 626 F.2d 225 (2d Cir. 1980).

The ALJ questioned Plaintiff about his work as a security patroller in the following exchange:

| | |
|---|---|
| ALJ: | And when did you work security? |
| Plaintiff: | Right after they closed the nursery. |
| ALJ: | And how long did you do security work? |
| Plaintiff: | Probably about three or four months. |
| ALJ: | And were you given the security position for any particular reason? |
| Plaintiff: | It, it—everybody—they laid everybody off and they gave it to me for a while. Let's see. |
| ALJ: | And were you armed security? |
| Plaintiff: | Ma'am? |
| ALJ: | Armed security or unarmed? |
| Plaintiff: | Unarmed. |
| ALJ: | And were you at one particular station throughout the day or did you have to patrol? |
| Plaintiff: | We had to patrol the whole place. |
| ALJ: | And when you did patrol, sir, were you on foot or was there a cart or van? |
| Plaintiff: | I drive sometimes and walk sometimes. |

Tr. at 24.

The record contains a work activity report in which Plaintiff indicated he had worked as a security guard for Alternative Staffing from December 1, 2010, through September 14, 2012, and that he earned $12.00 per hour and worked 40 hours per week. Tr. at 183. Plaintiff also indicated in a disability report a job title of "security" from December 2010 through September 14, 2012. Tr. at 200. However, in a work history report, he indicated he worked from December 2010 to September 14, 2012, as a laborer. Tr. at 247. In another work history report, Plaintiff indicated he worked as a laborer from

February 1993 to December 2010, but failed to include the work he performed after December 2010. Tr. at 206–07.

The undersigned recommends the court find that the ALJ reasonably relied on the record to conclude that Plaintiff's PRW included that of security patroller. The record indicates Plaintiff's job as a security patroller was performed in or after 2010, which was within the prior 15-year period. *See* Tr. at 25, 183, 200. It was SGA because it involved doing significant physical and mental activities for pay. *See* Tr. at 183 (Plaintiff indicated he worked 40 hours per week and earned $12.00 per hour). The VE testified the job had an SVP of three. Tr. at 25. According to the *DOT*, jobs with an SVP level of three require over one month and up to and including three months to learn. *DOT*, App'x C, 1991 WL 688702. Although the record contains inconsistencies between the written reports and Plaintiff's testimony regarding the amount of time he performed the job of security patroller, all records indicate Plaintiff performed the job for at least three months, which was long enough for him to learn how to perform the job according to the *DOT*. *Compare* Tr. at 24, *with* Tr. 183, 200. 20 C.F.R. § 404.1572. Therefore, the undersigned recommends a finding that the ALJ reasonably concluded that Plaintiff's work as a security patroller was PRW.

The undersigned further recommends the court find that the ALJ properly considered Plaintiff's PRW under the provisions of SSR 82-62. The ALJ found that Plaintiff could return to his PRW as it was actually performed and as generally performed in the national economy. Tr. at 17. She reached that conclusion after questioning Plaintiff regarding the specific demands of his PRW as a security patroller. *See* Tr. at 24. She also

considered Plaintiff's statements as to the past work requirements he was unable to meet, but concluded that the medical evidence did not support his allegations. *See* Tr. at 13–15. While the undersigned recommends a finding that the ALJ developed the record and fully explained her conclusion that Plaintiff retained the ability to perform PRW, the ALJ may be required to reassess Plaintiff's ability to perform PRW on remand if additional limitations are found as a result of reconsideration of Dr. Schumann's opinions and Plaintiff's impairments.

### 3.    Combination of Impairments

Plaintiff argues the ALJ failed to consider all of his impairments in combination in assessing his RFC. [ECF No. 21 at 18–21]. He maintains that the ALJ did not consider limitations imposed by lumbar degenerative disc disease. *Id.* at 19. He contends that back pain, in combination with shortness of breath, prevented him from walking and standing for six hours out of an eight-hour workday. *Id.* Plaintiff argues the ALJ dismissed evidence of limitations imposed by a torn rotator cuff and ignored his history of hernia repair and its resultant limitations. *Id.* at 20.

The Commissioner argues the ALJ considered Plaintiff's impairments in combination. [ECF No. 23 at 16]. She contends the ALJ properly concluded that Plaintiff's other impairments were not severe and that Plaintiff had no mental impairment. *Id.* at 17. She argues that the ALJ adequately explained that Plaintiff's impairments did not render him disabled either singly or in combination. *Id.* at 18.

When a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit,

requires that the ALJ consider the combined effect of those impairments in determining the claimant's RFC and his disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated the importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner must consider the combined effect of all of the individual's impairments "without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(b)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* The court later indicated that "the adequacy requirement of *Walker* is met if it is clear from the decision as a whole that the Commissioner considered the combined effect of a claimant's impairments." *Brown v. Astrue*, C/A No. 0:10-CV-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012), *citing Green v. Chater*, 64 F.3d 657, 1995 WL 478032, at *3 (4th Cir. 1995)).

The ALJ found that Plaintiff suffered from mild lumbar degenerative disc disease, carpal tunnel syndrome, and left shoulder acromioclavicular joint injury, but that the record indicated no significant treatment for those conditions. Tr. at 12. She wrote that there was no evidence of treatment for left shoulder pain in 2013 and that an x-ray of Plaintiff's left shoulder showed only mild degenerative changes. *Id.* She also noted that treatment notes from late-July and August 2013 indicated Plaintiff's carpal tunnel syndrome was improving. *Id.* She found "there is no documentation that these minor

medical problems have imposed recurring vocationally restrictive limitations for a period of 12 continuous months" and that they had "imposed no more than a combination of slight abnormalities" that "had no more than a minimal effect on the claimant's ability to work." Tr. at 12–13. The ALJ considered Plaintiff's impairments in combination in determining they were not medically-equivalent to Listing 4.02. Tr. at 14. She wrote the following:

> While the combination of the claimant's impairments does impose some limitations on the level of work activity the claimant can perform, the undersigned cannot find any limitations in the claimant's ability to carry out his activities of daily living. (Exhibit 8E). Therefore the claimant's treatment records fail to demonstrate that his ability to perform the residual functional capacity below has been compromised by the combination of his impairments.

*Id.* She concluded Plaintiff's RFC allowed for the following: to lift and carry up to 20 pounds occasionally and 10 pounds frequently; to stand, walk, and sit for 6 hours each in an 8-hour work day; to never climb ladders, ropes, or scaffolds; to occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and to avoid hazards such as unprotected heights and dangerous machinery. Tr. at 14.

The undersigned recommends a finding that the ALJ did not properly consider the combined effects of Plaintiff's impairments. Although the ALJ wrote that she considered the combined effects of all of Plaintiff's impairments, the RFC she assessed does not adequately account for all of Plaintiff's impairments and limitations. The ALJ failed to adequately consider Dr. Schumann's statements as to limitations imposed by Plaintiff's left shoulder injury and carpal tunnel syndrome and did not include in her RFC assessment any limitations as to Plaintiff's abilities to reach, handle, finger, push, or pull

with the upper extremities. The record contains objective evidence of carpal tunnel syndrome and limitations to Plaintiff's left shoulder, which include decreased strength, muscle tenderness, and painful and reduced ROM. *See* Tr. at 260, 268, 273, 276, 279, 287, 301. The ALJ indicated Plaintiff had not complained of pain in his left shoulder in 2013, but the record suggests otherwise. *See* Tr. at 275–77 (left shoulder tenderness, decreased ROM, shoulder injection only lasted a month on February 1, 2013), 273–73 (complaints of pain and weakness, Mobic not helping, chest wall tenderness to left shoulder, pain with raising and lowering of left arm on February 26, 2013). Although the record indicates improved carpal tunnel syndrome in late-July and August 2013, the improvement was noted to be in Plaintiff's right wrist and he continued to complain of pain with use of his hands and indicated no improvement in his left wrist. *See* Tr. at 295–96, 298–99, 300. Because the ALJ neglected to consider this objective evidence and the opinion of Plaintiff's treating physician, the undersigned is unable to conclude that she properly considered the effects of left shoulder impairment and carpal tunnel syndrome in determining Plaintiff's RFC. Plaintiff also argues the ALJ neglected to consider his history of hernia repair and its resultant limitations. [ECF No. 21 at 20]. While the record contains little regarding Plaintiff's history of hernia repair, Plaintiff did complain to Dr. Schumann of abdominal pain, mention his history of hernia repair, and indicate his pain was exacerbated by leaning over on February 1, 2013. Tr. at 275. The ALJ failed to acknowledge Plaintiff's history of hernia repair and did not consider it as part of Plaintiff's combination of impairments in assessing his RFC. As for Plaintiff's argument that the ALJ neglected to consider the combined effects of his back pain and shortness of

breath on his ability to stand and walk for six hours out of an eight hour workday, the undersigned finds that further limitations on those abilities is not supported by the record. Although Plaintiff complained of back pain on several occasions, the record reflects that his back pain was not exacerbated by standing and walking, but was instead exacerbated by sitting and lying down and improved with movement. *See* Tr. at 259, 269, 271, 272. Therefore, the undersigned recommends the court find that the ALJ did not adequately consider Plaintiff's left shoulder impairment, carpal tunnel syndrome, and history of hernia repair in combination with a history of congestive heart failure, but that she did adequately consider degenerative disc disease of Plaintiff's lumbar spine.

4.    Credibility

Plaintiff argues the ALJ failed to consider all of the evidence in the case record in assessing his credibility. [ECF No. 21 at 21]. He maintains that the ALJ did not consider his allegations with specificity, his daily activities, or his work history. *Id.* at 22.

The Commissioner argues the ALJ explained that she evaluated Plaintiff's opinion in accordance with controlling agency regulations and rulings. [ECF No. 23 at 13]. She maintains the ALJ evaluated Plaintiff's daily activities, reviewed his medical treatment, and considered the fact that he was taking no medications in assessing his credibility. *Id.* at 13–14.

Allegations of pain or other symptoms in the absence of medical signs and laboratory findings demonstrating the existence of a medically-determinable impairment cannot be the basis for a disability finding. SSR 96-7p. The ALJ should only consider the intensity, persistence, and functionally-limiting effects of symptoms after the claimant

25

has established the existence of a medically-determinable impairment. *Id.* "[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record" in determining whether the claimant's statements are credible. *Id.* To assess the credibility of the claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* The ALJ cannot disregard the claimant's statements about symptoms merely because they are not substantiated by objective medical evidence. *Id.* Furthermore, the ALJ must specify his reasons for the finding on credibility, and his reasons must be supported by the evidence in the case record. *Id.* The ALJ's decision must clearly indicate the weight accorded to the claimant's statements and the reasons for that weight. *Id.*

The ALJ found Plaintiff's medically-determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Tr. at 15. She concluded that Plaintiff's reports to his treating and examining physicians and his physicians' findings upon examination were inconsistent with his testimony. *Id.* She cited Plaintiff's activities of daily living and found they were "representative of a fairly active and varied lifestyle" and were "not indicative of a significant restriction of activities or constriction of interests." *Id.* The ALJ found that Plaintiff's testimony was not substantiated by his presentation upon examination. *Id.* She noted that Plaintiff did

not take any medication for congestive heart failure. Tr. at 16. She indicated Plaintiff's chronic heart failure was present at approximately the same level of severity prior to his alleged onset date and did not prevent him from working at that time. *Id.*

The undersigned recommends the court find that the ALJ erred in assessing Plaintiff's credibility. Although the ALJ considered a number of factors discussed in SSR 96-7p in reaching her conclusion that Plaintiff's statements were not entirely credible, she neglected to properly consider the opinion of Plaintiff's treating physician and objective evidence that supported Plaintiff's alleged limitations. Because SSR 96-7p requires the ALJ to consider the entire record in assessing a claimant's credibility and in light of evidence that she neglected to consider some evidence, the undersigned is constrained to find that the she did not properly assess Plaintiff's credibility in this case.

III.     Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.

April 17, 2015                              Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).